IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 27, 2009 at Knoxville

## ALVIS LEROY SADLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-A-702     Monte Watkins, Judge**

_____

**No. M2008-02853-CCA-R3-PC - Filed January 4, 2010**

_____

The petitioner, Alvis Leroy Sadler, appeals from the denial of his petition for post-conviction relief. In this appeal, he asserts that he was denied the effective assistance of counsel and that he did not knowingly and voluntarily plead guilty. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Bernard McEvoy, Nashville, Tennessee, for the appellant, Alvis Leroy Sadler.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Roger Moore and Debbie Housel, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On October 13, 2006, the petitioner, Alvis Leroy Sadler, who was originally charged with the second degree murder of the victim, Everett Alexander Lowe, entered a plea of guilty to a single count of the aggravated assault of the victim. Pursuant to a plea agreement with the State, the petitioner received a sentence of eight years to be served as a Range II, multiple offender in the Department of Correction. On May 18, 2007, the petitioner filed a timely petition for post-conviction relief alleging, among other things, that his guilty plea was not knowingly and voluntarily entered and that he was denied the effective assistance of counsel. On June 5, 2007, the post-conviction court entered a preliminary order appointing counsel. More than a year later, the post-conviction court filed an order noting that the first two attorneys appointed to represent the petitioner had been relieved and appointing new counsel. Post-conviction counsel filed an amended petition for post-conviction relief on August 13, 2008, again asserting that the petitioner was denied the

effective assistance of counsel and that he did not knowingly, intelligently, and voluntarily plead guilty.

At the October 8, 2009 evidentiary hearing, trial counsel, who was initially appointed to represent the petitioner in the general sessions court, testified that the petitioner was incarcerated in a Corrections Corporation of America ("C.C.A.") facility on a probation violation pending trial. Counsel stated that he conducted a "big long" preliminary hearing at which several witnesses testified that the petitioner "approached the victim, the victim put his hands in the air, at which point [the petitioner] hit him. And once he hit him the victim fell back. His eyes rolled back in his head. He died, almost, simultaneously, immediately." Counsel testified that he was not surprised that three witnesses failed to identify the petitioner as the perpetrator from a photographic lineup, but he insisted that the State's case was strong and that other witnesses who testified at the preliminary hearing made in-court identifications of the petitioner. Counsel stated that it was his opinion that identity was not an issue in the case because the petitioner admitted to counsel that he had struck the victim. He stated that he focused his efforts on negating the mens rea element of second degree murder, an element that he believed the State could not prove.

Counsel could not recall precisely the number of times he visited the petitioner in jail, but he believed he went on two or three occasions. He conceded, however, that it was possible that he never went to the jail and only met with the petitioner at the courthouse. Counsel agreed that the expense form he submitted to the Administrative Office of the Courts showed two instances of "client consultation," but neither entry identified the location of the consultation.

Counsel testified that he informed the petitioner of the elements of second degree murder and told the petitioner that he did not think the State would be able to prove that the petitioner knowingly killed the victim. Counsel stated that he and the petitioner also discussed lesser included offenses. Counsel recalled that the petitioner's "main concern at the time is he did not want to be at C.C.A. any longer, because he was in segregation." Counsel testified that he told the petitioner that he did not believe that the petitioner would be convicted of second degree murder but that he also did not believe the petitioner was "going to walk home scot free."

Counsel testified that he was "sure" that he had informed the petitioner that any sentence as a result of this case would have to be served consecutively to the sentence on which his probation was revoked. He could not specifically recall their conversation but stated that providing such information was one of the first steps in his representation of any client.

Counsel stated that he received discovery from the State and that he provided the discovery "in its entirety" to the petitioner. Counsel testified that "everything, including the autopsy" was provided to the petitioner. Counsel recalled that he hired a private investigator to assist in the petitioner's case, but he could not recall any specific direction he may have provided to the investigator or any specific information the investigator provided to him.

During cross-examination by the State, counsel testified that the petitioner's girlfriend testified at the preliminary hearing that the petitioner struck the victim. He stated that following the lengthy preliminary hearing wherein at least two people identified the petitioner as the perpetrator, he received the State's written response to his discovery request, which included a notation that counsel was also given "open file discovery." Counsel recalled speaking with the petitioner "at the jail docket," and the petitioner "indicated to [counsel] that he had struck the [victim] . . . and then he got worried afterwards when he figured out what happened." Counsel stated that he briefly considered pursuing a theory of self-defense but upon further investigation he realized the defense "wasn't there." Counsel recalled that he was successful in having the petitioner's bond lowered.

Counsel recalled that one of the first plea offers from the State was a 10-year sentence in exchange for the petitioner's plea of guilty to voluntary manslaughter. Because the petitioner was unwilling to plead guilty to any homicide offense, the State offered an agreement that provided for an eight-year sentence in exchange for the petitioner's guilty plea to aggravated assault. Counsel stated that he informed the petitioner that because of his prior criminal record, he would have to serve the sentence at 35 percent rather than 30 percent. He said that the petitioner "appeared to" understand the terms of the agreement. Counsel stated that he believed that he had procured a good outcome for the petitioner and that the petitioner was "happy with the result."

The petitioner testified that counsel initially told him that the eight-year sentence in this case would be served concurrently to a previously imposed six-year sentence. Later, the trial court told him that the two sentences would be served consecutively. The petitioner insisted that he did not question the trial court's statement because counsel "told [him] not to say a word." The petitioner stated that trial counsel never met with him at his place of incarceration but did speak with him over the phone and in the holding area before various court appearances.

The petitioner insisted that counsel never informed him of the elements of second degree murder. The petitioner also denied ever viewing discovery materials prior to entering his guilty plea, claiming that he only received such materials after filing a complaint with the Board of Professional Responsibility. The petitioner denied reviewing the potential evidence with counsel or discussing the likelihood of his being convicted of second degree murder. The petitioner stated that he was unaware that three witnesses had failed to identify him from a photographic lineup or that other witnesses had given descriptions of the perpetrator that did not match his physical appearance at the time of the offense. He insisted that, had he been provided this information, he would not have pleaded guilty and "probably would have taken it to trial." He testified that he pleaded guilty because counsel "said that was the lesser charge that he could get" the petitioner.

During cross-examination by the State, the petitioner admitted that he had entered guilty pleas on several occasions before entering the plea in this case. He conceded that he had previously rejected the State's offer of "ten years at thirty-five percent" and agreed that he was aware that he "had to flatten" the sentence he was serving at the time of the plea. The petitioner stated that he did not "necessarily want to go to TDOC," but he "wanted to come out of . . . the hole." The

petitioner admitted that he punched the victim in the face and that at least one witness would identify him as the perpetrator.

At the conclusion of the evidentiary hearing, the post-conviction court took the petition under advisement, and in a later-filed written order, the court denied post-conviction relief. The post-conviction court accredited counsel's testimony that "he met with the [petitioner] and informed him of the nature of the charges against him, the likelihood of conviction and range of punishment as well as the nature and consequences of the plea agreement." The court also concluded that counsel "provided the petitioner copies of documents in his possession." The court determined that "[a]lthough the plea form does not state the eight[-]year sentence is to be served consecutively to [the] present sentence, the judgment form indicates that the petitioner is pleading to a consecutive sentence." The post-conviction court noted that it did "not find the petitioner's testimony to be credible." The court ruled that the petitioner had failed to establish by clear and convincing evidence that he was denied the effective assistance of counsel or that his guilty plea was not knowingly or voluntarily entered.

In this appeal, the petitioner reasserts claims of ineffective assistance of counsel and involuntary and unknowing guilty plea. The State contends that the petitioner failed to establish either claim by clear and convincing evidence and that the post-conviction court appropriately denied relief. We agree with the State.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that the advice given, or the services rendered by the attorney, fell below "the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. 2068. In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by

-4-

pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370.

Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Our supreme court, in setting forth the standard for identifying a constitutionally valid guilty plea, has noted that "before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily." *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969)). Our high court has noted that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43, 89 S. Ct. at 1712), or if the defendant was "incompetent or otherwise not in control of his mental facilities" when the plea was entered. *Id*.

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Here, the post-conviction court accredited counsel's testimony that he informed the petitioner of the elements of second degree murder, the likelihood that he would be convicted of that offense, and the potential sentences he faced. The court also accredited counsel's testimony that he shared with the petitioner all the information counsel received in response to his discovery request. At the evidentiary hearing, the petitioner confirmed counsel's testimony that his greatest concern at the time he entered the plea was release from administrative segregation and transfer from the C.C.A. facility. The post-conviction court found unconvincing the petitioner's testimony that he would not have pleaded guilty had he been aware of the inability of three State's witnesses to identify him from a photographic lineup.

Counsel's testimony established that identity was not an issue in the petitioner's case because the petitioner had admitted striking the victim and the petitioner's girlfriend had testified at the petitioner's preliminary hearing that the petitioner struck the victim, causing his death. Although the petitioner presented evidence that at least three witnesses could not identify the petitioner as the perpetrator, other witnesses at the preliminary hearing were able to identify the petitioner as the man who struck the victim. Despite these identifications, counsel was successful in procuring a plea agreement that allowed the petitioner to plead guilty to aggravated assault, a Class C felony, when he had originally been charged with second degree murder, a Class A felony. The petitioner, who already possessed a lengthy criminal history at the time of the offense, admitted that he had entered guilty pleas on several prior occasions and that he was familiar with the process.

Given the petitioner's familiarity with the justice system and the guilty plea process, as well as the post-conviction court's accrediting counsel's testimony and finding the petitioner's testimony incredible, the petitioner has failed to establish by clear and convincing evidence that he was denied the effective assistance of counsel or that his guilty plea was not knowingly or voluntarily entered. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE